County Commissioners of Frederick County *vs.* Clagett.

---

THE COUNTY COMMISSIONERS OF FREDERICK COUNTY *vs.* THOMAS CLAGETT.

*Liability of an Alienor of Property for Taxes.*

Where property after alienation is allowed to remain on the tax books of the county, assessed to the alienor, and he fails to avail himself of the means provided by law to have the assessment corrected, he is liable for the taxes on such property, and they may be recovered in an action of *indebitatus assumpsit* against him by the County Commissioners.

APPEAL from the Circuit Court for Frederick County.

The cause was submitted to BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*James McSherry, Jr.,* for the appellants.

*William J. Ross,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This case comes before us upon a statement of facts agreed on by the parties. The action is *indebitatus as-*

County Commissioners of Frederick County *vs.* Clagett.

*sumpsit* instituted by the appellants against the appellee, to recover the taxes for the year 1866, assessed upon a parcel of land lying in Frederick county.

The land, which had belonged to the appellee, was sold and conveyed by him, a part of it in 1862, and the residue in January, 1866. The deeds of conveyance were registered, the first in August, 1862, and the last on the 6th of January, 1866. No list of alienations was returned by the Clerk of the Circuit Court to the Commissioners, as required by the 9th section, Article 81, of the Code, and the Commissioners had no knowledge of the conveyances of the land by the appellee. The assessment of the same remained unchanged on the tax books in the name of the appellee, and the taxes thereon were charged to him. He continued to pay the taxes upon the whole parcel of land, as well for the part aliened in 1862 as of the rest, until the year 1866.

No notice was given by the appellee to the Commissioners of the alienations, nor was any application made by him to them for an allowance or deduction on account of the transfer of the property, although notice, by publication in several newspapers in the county, was duly given by the Commissioners before making the levy for the year 1866, of the time of meeting, for the purpose of correcting assessments, making transfers on their books, &c.

Some other facts are contained in the statement which it is not material now to notice.

The single question presented for our decision is, whether upon this state of facts the appellee is liable for these taxes.

It is contended that, under the Code, Art. 81, sec. 13, he is exempt from liability. That section says: "No person shall be chargeable with the assessment of property which he may have aliened, but the same shall be chargeable to the alienee," and provides that the County Commissioners shall from time to time correct the account of

any person who may have parted with the possession of property, and the same so taken off shall be charged to the person who may have acquired possession of the property.

In construing this section, it is our duty to consider it in connection with the other provisions of the 81st Article, which relate to the same subject and form one system. By reference to sections 9, 13, 14, 17, 18 and 19, it appears that while it is made the duty of the Tax Commissioners to assess property in the name of the owner, and where it has been aliened it is directed, by the 13th section, that the assessment shall be chargeable to the alienee who is ultimately responsible for them ; there are certain means provided by the law to enable the Commissioners to correct the assessments, and to transfer the same upon their books to the proper parties to be charged therewith.

The 9th section directs the Clerk of the Circuit Court to furnish to the Commissioners a list of alienations. It appears this duty of the clerk was neglected in the present case.

But it is evident that the list to be furnished by the clerk is not, in the contemplation of the law, the only means of information for the Commissioners to act on. They are required to meet annually for the purpose of noting transfers, and to give notice of such meeting, and in 18 *Md.*, 26, it was said " that the law and the publication impute notice to all persons, whether they had actual information or not."

By the 18th and 19th sections provision is made for cases of application to the Commissioners, by persons interested, to have allowance or deduction on account of alienations.

From these provisions of the Code it is evident that a duty devolves upon a party who has aliened property with which he stands assessed, to avail himself of the means which the law provides to have the transfer noted upon

the tax books, and to obtain allowance therefor. If he fails to take this step he cannot justly complain of being charged with the tax, nor can he escape the legal liability for the tax, lawfully assessed upon the property and standing against him upon the assessment books.

It would be a narrow construction of the 13th section to hold that the alienor of property would not be liable for the taxes thereon under circumstances like these. Such a construction would be inconsistent with the 18th and 19th sections. By the latter it is expressly provided that in case a party, who makes application for a reduction or abatement of his assessment, on account of alienations, refuses to answer the questions of the Commissioners with regard to acquisitions or investments not included in his assessment, " *no allowance or deduction shall be made.*" The effect of this is, in such case, to leave him liable for the tax notwithstanding the alienation. And, in our opinion, the same consequence follows where a party, as in this case, continues to be assessed with property by the Commissioners, acting in good faith and ignorant of the alienation, and fails to avail himself of the means provided by law to have his assessment corrected. The cases of *The Church vs. M. & C. C. of Balt.,* 6 *Gill,* 391, and *O'Neal vs. Bridge Co.,* 18 *Md.,* 1, though not in all respects analogous, tend to support the conclusion we have expressed in this case.

The judgment of the Circuit Court must be reversed, and under the agreement judgment will be entered for the appellants for $162.24, with interest thereon from January 1st, 1867, till paid, and costs of this suit.

*Judgment reversed, and judgment for appellants.*

(Decided 30th June, 1869.)