LOUIS BAMBERGER and ABRAM G. HUTZLER,
EXECUTORS OF THE ESTATE OF ELKAN
BAMBERGER, DECEASED,

·vs.

THE MAYOR & CITY COUNCIL OF BALTIMORE.

—

SAME vs. STATE OF MARYLAND.

*Taxes: after settlement and distribution of estate; executors'
liability.*

Under the statutes in force in Maryland, the liability of ad-
ministrators and executors for the payment of taxes upon the
property of their decedent, does not extend to the payment of
taxes becoming due after the settlement and distribution of the
estate, although the annual valuation and assessment of such
property, as well as the levy thereon, may have been made prior
to such settlement and distribution of the estate.          p. 443

*Decided April 7th, 1915.*

Two appeals in one record from the Baltimore City Court.
(SOPER, C. J.)

The causes were argued together before BOYD, C. J., BRIS-
COE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and
CONSTABLE, JJ.

*Charles Markell* (with *Gans and Haman* on the brief),. for the appellants.

*Edward J. Colgan, Jr., Assistant City Solicitor* (with whom was *S. S. Field, the City Solicitor,* on the brief), for the appellees.

PATTISON, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore brought suit against the appellants as executors of Elkan Bamberger,. deceased, to recover city taxes for the year 1910 upon the estate of the decedent. The estate consisted of furniture and household effects and of "bonds, certificates of indebtedness and evidences of debt." On the first day of October,. 1909, the furniture was valued and assessed, for the purpose of taxation for the year 1910, at the sum of $600, and the bonds, etc., were at such time and for said purpose assessed at the sum of $258,756. After such valuation and assessment and after the passage of an ordinance on the 23rd day of December, 1909, making the annual levy of taxes, but before the taxes became due and payable on January 1, 1910,. the appellants, under an order of the Orphans' Court of Baltimore City passed on the 29th day of December, 1909,. distributed the estate of their decedent without paying therefrom the aforesaid taxes for the year 1910.

It was to recover these taxes that the suit in this case was brought, and the only question presented by this appeal is, whether the appellants as such executors are liable for the payment of said taxes.

It is not because of any beneficial ownership in the estate of their decedent that administrators and executors are chargeable with the payment of taxes thereon, but it is a statutory liability imposed upon them as custodians and holders, in their representative capacity, of a qualified title in the estate, pending its settlement, and consequently we must look to the statute to find their liability as well as the extent of such liability.

Section 70 of Article 81 of the Code of 1912 provides that "Administrators shall pay all taxes *due* from their decedent as preferred debts, and to the exclusion of all others, except the necessary funeral expenses; and on failure, their bonds shall be put in suit for the use of the State, and recovery had for the whole amount of taxes *due,* and interest from the time they were payable"; and section 11 of said Article provides that "The several registers of wills in this State shall annually, on or before the first day of March, return to the county commissioners or appeal tax court, a summary account of all property that shall appear by the records of the several orphans' courts to be in the hands of such executor, administrator or guardian as such; and all such property, if not before assessed, shall then be assessed; and every executor, administrator or guardian shall be liable to pay the taxes levied thereon and shall be allowed therefor by the orphans' courts in their accounts."

In our opinion, the above provisions of the Code, when construed together, confine the liability of administrators and executors to the payment of those taxes *due* from the decedent at the time of his death and to such other taxes as may thereafter become *due* while the estate is in the course of settlement and before it is distributed, including, of course, the taxes upon assessable property that was not at the time of decedent's death assessed, but which was thereafter, under said section 11, assessed and brought within the operation of levies previously made.

The correctness of this conclusion is shown by the decisions of this Court in *Wheeler* v. *Addison,* 54 Md. 41, and *State* v. *Safe Deposit & Trust Co.,* 86 Md. 581. In the first of these cases the Court was construing section 63 of Chapter 483 of the Acts of 1874, which is now section 68 of Article 81 of the Code, with the sole amendment that from the proceeds of the sale only the taxes upon the property sold shall be paid. This Court in that case said: "The sale was made September 14, 1877, and the taxes were not then

due and in arrear for the year 1877. Section 63 of the Acts of 1874, Chapter 483, reads thus: 'Whenever a sale of either real or personal property shall be made by any ministerial officer, under judicial process or otherwise, all sums *due and in arrears* for taxes from the party whose property is to be sold, shall be first paid and satisfied, and the officer or person selling shall pay the same to the collector of the county or city, if any, or to the treasurer if there be no collector. And the 66th section of the same Article declares that taxes shall be considered in arrears on the first day of January next succeeding the date of their levy, and shall bear interest from that date at the rate of six per cent. per annum.' According to the express language of the statute, taxes are not to be regarded in arrears until the first day of January after the levy made. These taxes are expressly named as being for 1877. They were therefore not in arrears until the first of January, 1878, and by the terms of the law the trustee was not bound to pay them."

In the case of *State v. Safe Deposit & Trust Company, supra,* the main question there presented was when did the State taxes assessed upon the stock of the corporation become due. The determination of that question was necessary in order to determine whether the trustee, who had sold some of the stock of the corporation on the 23rd day of May, 1895, was chargeable with the taxes for that year. This Court held in that case that the taxes were not due and in arrears, under section 84 of Article 81 of the Code of 1888, as modified by the Acts of 1890, Chapter 244, until the first day of November, and consequently such taxes were not due and in arrears when the property was sold on May 23rd of that year.

The Court having decided when the taxes became due and in arrears, it then became necessary, in order to determine whether such taxes were properly chargeable against the trustee, for the Court to construe section 64A of Chapter 407 of the Acts of 1896, now section 69 of Article 81 of the Code of 1912, which provides that "Whenever a sale of

either real or personal property of a corporation, on which
State taxes are due and payable, shall be made by any sheriff,
constable, trustee, or other ministerial officer, under judicial
process or otherwise, all sums *due* and *in arrears* for State
taxes from the corporation whose property is sold, shall be
first paid and satisfied after the necessary expenses incident
to the sale." And the Court there said: "As the sale of the
property (the stock of the corporation) took place on the
23rd day of May, 1895, there were no taxes for that year
due and payable at the time of this sale properly chargeable
against the trustee, the appellee in this case. The statute
provides only for the payment of such taxes as may be *due*
and *in arrears* at the time of the sale of the property."

This Court again construed section 68 of Article 81 in
the *Casualty Ins. Co.'s case,* 82 Md. 565, in which it said:
"These taxes were consequently due when the company's
assets passed into the hands of the receiver, and being *then
due,* the Act of 1892, Chapter 518 (now section 68 of Article
81 of the Code of 1912), directs that they shall be paid and
satisfied by the officer or person selling under judicial proc-
ess the property, real or personal, upon which such taxes are
payable."

But it is contended by the appellees that the liability of
administrators and executors in respect to the payment of
taxes upon the estate of their decedent has been extended
and enlarged by certain provisions of the city charter found
in sections 36, 40, 168 and 171 (Acts 1898, Ch. 123).

Section 36 creates the Board of Estimates and provides
that such board shall annually, between the first day of Octo-
ber and the first day of November, cause to be prepared a
draft of an ordinance to be submitted to the City Council
providing appropriations sufficient to meet all expenditures
of the city government for the ensuing year, which ordinance
when passed is designated therein as the ordinance of esti-
mates.

Section 40 provides:

"The Board of Estimates shall, on the first day of October, or as soon thereafter as practicable, in the year 1898, and in each succeeding year, procure from the proper municipal departments and shall send with said ordinance of estimates to both branches of the City Council a report showing the taxable basis for the next ensuing fiscal year and the amount which can reasonably be expected to be realized by taxation for said year.    The report shall show the difference between the anticipated expenditures and receipts of the city and shall state a rate for the levy of taxes sufficient to raise the amount required to meet the said difference."    The section then provides for the passage of an "ordinance making the annual levy of taxes, which ordinance shall be passed by the Mayor and City Council of Baltimore in the month of November in each year, and as soon as practicable after the passage of the ordinance of estimates, the Mayor and City Council of Baltimore shall fix a rate of taxation not less than the rate stated in the aforesaid report. * * * The taxes levied under said ordinance * * * shall be the taxes to be collected for the fiscal year next ensuing after said month of November and may be paid to the city collector on or after the first day of January next ensuing said levy.    The taxes included in said levy on * * * all forms of personal property shall be in arrears on the first day of May next ensuing the date of their levy," and shall bear interest from such time.

Section 168 is a re-enactment of said section 11 of Article 81 of the Code of 1912, with the single amendment that the return therein mentioned to be made by the register of wills is to be made on or before the first day of October instead of on or before the first day of March, as provided in said section 11 of the Code.

Section 171 of the charter provides:

"In the year 1898, and in all succeeding years thereafter, the valuation of the property subject to taxation

in the City of Baltimore, as it shall appear upon the
assessment books of said court on the first day of Octo-
ber in each and every year, shall be final and conclu-
sive and constitute the basis upon which the taxes for
the next ensuing fiscal year shall be assessed and lev-
ied; provided, the aforegoing provisions shall not ap-
ply to property in the city liable to taxation and which
may have escaped or which may have been omitted in
the regular course of valuation, but such property shall
be valued and assessed and the owners thereof charged
with all back and current taxes justly due thereon
whenever the same may be discovered and placed upon
the assessment books."

It is upon the provision found in section 171, "that the
valuation of property subject to taxation in the City of Balti-
more as it shall appear upon the assessment books of said
Court on the first day of October in each and every year,
shall be final and conclusive and constitute the basis upon
which the taxes for the next ensuing year shall be assessed
and levied," considered in connection with the aforesaid
sections 36, 40 and 168 of the Charter, that the appellees
chiefly rely in their contention that upon and after the afore-
said valuation and assessment of the decedent's estate the
appellants, as his executors, became liable for the payment
of the taxes thereon for the ensuing year, even though the
estate was distributed by them, under the order of the
Orphans' Court, before said taxes became due.

This provision of the present charter appears, in prac-
tically the same language, in the City Codes of 1879, 1892
and 1893, the only difference being, as shown by the pre-
ceding codes, that the assessment and valuation was to be
made upon the first Monday of March and not upon the
first day of October, as provided by the present charter.

In the case of *Hopkins* v. *Van Wyck,* 80 Md. 7, which was
decided November 14, 1894, this provision of the charter
was before the Court. In that case property which was in

existence and assessable on the first Monday of March, 1892,
escaped valuation and assessment and was not at such time
entered upon the assessment books.    It was thereafter, on
May 12, pursuant to section 9, now section 11 of Article 81,
placed upon the assessment books of that year.    The execu-
tors, however, resisted the payment of the taxes upon the
ground that their testatrix had not been charged with this
property on the assessment books on the first Monday of
March, 1892.    The same contention was there made that is
made here, that such assessment and valuation was *conclusive*
and that no property not included within such assessment
and valuation could be made to come within the operation
of the levy of that year, and this view was adopted by the
lower Court, but upon appeal to this Court JUDGE McSHERRY,
speaking for the Court, said: "In the system thus devised
to put into effective operation the fundamental law, it is
obvious that, to avoid confusion and uncertainty, some defi-
nite period had to be adopted as the point of time, in each
year, when the *valuation or appraisement* fixed upon the
property actually assessed and charged upon the books to
each individual, would no longer be open to question, but
would be conclusively ascertained and made binding upon
both the city and the taxpayer alike.    Accordingly, the
Mayor and City Council, by section 5 of Article 50 of the
City Code of 1892, provided that 'the valuation of property
as it shall appear by the assessors' books upon the first
Monday of March, shall be final and conclusive and constitute
the basis upon which the taxes for the ensuing year shall be
assessed and levied.'    But it was never designed by this pro-
vision to exempt from taxation for a current year the indi-
vidual who, by adroitness or otherwise, succeeded in eluding
the vigilance of the assessors, or who, by inadvertence, was
not rated with all his assessable property on the first Mon-
day of March of that particular year.    Its only object is to
fix for a current year a final and conclusive valuation upon
such property of each taxpayer as is, on the first Monday in
March, actually entered upon the assessment books; and

not to exempt property that is not, but ought rightfully to
be there.   *It has relation to ascertain values and not to an
exclusive basis."*

· The aforesaid sections 68 and 69 of Article 81, in addition
to the one here involved (section 70), would seem to make it
impossible to regard the valuation and assessment made on
October 1st of any year as absolutely conclusive and final
as to the property and amount of property subject to taxa-
tion for the ensuing year.   Under these sections of the Code
the amount of property so valued and assessed was liable to be
diminished by the sale of any part of it.   And, said section
171 of the charter, containing the provision that such valua-
tion and assessment "shall be final and conclusive and con-
stitute the basis upon which the taxes for the next ensuing
fiscal year shall be assessed and levied," especially provides
that such "provision shall not apply to property in the City
liable to taxation and which may have escaped or which may
have been omitted in the regular course of valuation, but such
property shall be valued and assessed and the owner thereof
charged with all back and current taxes justly due thereon
whenever the same may be discovered and placed upon the
assessment books."   By this provision of the section the
amount of property embraced within the annual valuation
and assessment was liable to be increased by the addition
of after discovered property.   And therefore it will be seen
by the existing laws that the property and amount of prop-
erty embraced within the general valuation and assessment
cannot be regarded as final and conclusive as the exact basis
of taxation.

It is not contended by the appellees that by the aforesaid
sections of the City Charter, the taxes are made to become
due and payable *earlier* than the first day of January in the
year succeeding the assessment and valuation.   But the con-
tention is made by them that to effectuate the objects and
purposes of sections 36 and 40 of the City Charter, relating
to the annual budget, the above quoted language of section
171 should be given a broader and more comprehensive

meaning than was given to it in the case of *Hopkins* v. *Van Wyck, supra.* The claim is made that to comply with the provisions of said sections it is essential that the Board of Estimates should know, at the time of making its estimate as to the needs and resources of the city and before the levy is made, the property and amount of property subject to taxation for the ensuing year, and it is for such reason, as we understand the contention of the appellee, that the claim is made that administrators and executors are to be held liable for the payment of taxes upon property of their decedent, valued and assessed on or before the first of October in any year, for the ensuing year, although the estate may be fully closed and the property distributed before the taxes for such ensuing year become due and payable.

In complying with the provisions of the Charter it is, of course, well to know so far as it is practicable to ascertain, at the time the levy is made and the rate fixed and established, what property is subject to taxation for the ensuing year and the value of such property; and this was true under the Charter of the City at the time the case of *Hopkins* v. *Van Wyck* was decided. It may be that under the present Charter this information is still more important in order that its provisions may be more readily and satisfactorily complied with, but for such reasons we do not feel called upon to modify the recognized meaning heretofore given to this language of the charter, or to modify the usual and ordinary meaning to be given to the language of the statute imposing liability upon administrators and executors for the payment of the taxes of their decedent, in the absence of any legislative enactment thereon.

The liability of administrators and executors for the payment of taxes upon property of their decedent, does not, we think, extend to the payment of taxes becoming due after the settlement and distribution of the estate, although the annual valuation and assessment upon such property, as well as the levy thereon, may have been made prior to such settlement and distribution of the estate, as in this case.

The appellees in their brief quote largely from the case of *Union Trust Company* v. *State,* 116. Md. 3.68, and rely largely upon this as well as the case of *Baltimore City* v. *Chester S. S. Co.,* 103 Md. 400.

In the first of these cases the Court was construing section 150 of Article 81 of the Code of 1904, now section 153 of the Code of 1912. That section provides that the president or other officer of any corporation located and doing business in this State, shall, by the 15th of March in each year, report to the Stae Tax Commissioner a true and correct statement of the number of shares of the capital stock of such corporation and the par value of each share, with such information in regard to the value of the same as may be required by the Commissioner, and may be in the possession of such officer as of the first day of January in each year. The Commissioner is then required to value and assess said shares of stock as of the first of January next preceding. The section then provides that it "shall be the duty of the said president, cashier or other chief officer, on or before the first day of January next succeeding, to pay to the treasurer of the State, the State tax on said shares of the capital stock of such bank or banking association or other incorporated institution of which he is president, cashier or other chief officer as aforesaid."

In that case the treasurer of the company, on January 11th, filed with the State Tax Commissioner the report required to be made by the aforesaid section of the Code, and on January 22nd of the same year the Tax Commissioner placed a valuation upon said stock and a levy was made thereon. On February 25th, 1907, the Union Trust Company reduced its outstanding stock from twenty thousand to ten thousand shares and paid off, liquidated and retired ten thousand shares, and on the 16th of April, 1906, notified the Tax Commissioner of such reduction in its capital stock. The corporation resisted the payment of the taxes upon the entire twenty thousand shares of its stock, claiming that it

should pay taxes for such year only upon the remaining ten thousand shares.

We, in that case, on construing the aforesaid section of the Code, held the corporation liable for the payment of taxes upon the entire twenty thousand shares of its stock.

We are, however, unable to discover any similarity between that case and the case now before us. The liability of the corporation was dependent upon the statute, as the liability of the executors and administrators is dependent upon statute. The provisions of the statute creating the liability in respect to the corporation in that case differs altogether from the provisions of the statute creating the liability in respect to the executors in this case.

The officer of the company in that case was required to send to the Tax Commissioner his report showing the number of shares and the value of such shares on the preceding first day of January, which he did; and the Commissioner, upon the receipt of such report, was required to value and assess such stock, which he did; and the levy being made, the corporation was specifically required "on or before the first day of January next succeeding to pay to the treasurer of the State the State tax upon such shares of the capital stock." The liability of the corporation was in no sense dependent upon the question as to whether the taxes were due, but it was directed, in language which admits of no uncertainty, to pay the taxes levied upon the stock so returned by it as of the first day of the preceding January on or before the succeeding first day of January. The Court there said: "The Trust Company knew on February 25th that it had made a return to the State Tax Commissioner of twenty thousand shares of stock; it further knew that this stock was subject to taxation, and that the company was the agent of the State for collecting that tax; it was, therefore, its plain duty when it paid off the stockholders and retired ten thousand shares, to have retained from each one a sufficient amount to have paid the tax, and it cannot now set up its own voluntary act of the payment out of the money, as a

ground to defeat a suit upon the part of the State, brought in accordance with the statute and based upon the sworn return of the corporation."

The same section of the Code was before this Court in the case of *Baltimore City* v. *Chester S. S. Co., supra,* and we find nothing in the opinion in that case inconsistent with the conclusion we have here reached.

In this case a plea was filed setting up the defense that the executors were not liable for the payment of the aforesaid taxes for the year 1910, in as much as the estate was finally settled and the property distributed before such taxes became due and payable, and that the Appeal Tax Court was duly notified in writing that the estate had been fully administered and the assets distributed, and that the defendants denied all liability for the payment of such taxes. To this plea a demurrer was interposed, which was sustained by the Court below, whereupon the case was submitted to the Court for trial on the issues joined on the remaining pleas, first, that they never promised as alleged, and, second, that they were never indebted as alleged, and a verdict was rendered by the Court in favor of the plaintiff, upon which a judgment was rendered.

From what we have said, we think the Court was wrong in sustaining the demurrer to the defendant's plea. We must, therefore, reverse the judgment of the Court below, and in as much as it was admitted at the trial, which admission is found in the record, that the distribution of the securities and property shown in the final account of the executors was in fact made to the parties therein named on or before the date of said account, to wit: December 29, 1909, and before the said taxes for the ensuing year became due and payable, it will serve no useful purpose to award a new trial in this case. Therefore, the case will be reversed without new trial.

*Judgment reversed, without new trial, with costs to the appellant.*