### In re F. G. BORDEN CO.

### RICE, Town Treasurer, et al. v. CLEMMONS et al.

(Circuit Court of Appeals, Seventh Circuit. April 26, 1921.)

#### No. 2820.

Bankruptcy ⊜═346—State held entitled to preference for income tax; "all taxes"; "legally due and owing."

Under Bankruptcy Act, § 64a (Comp. St. § 9648), the estate adjudicated bankrupt March 22, 1919, on application filed that day, was, as to income earned in 1918, subject to the preferential claim of the state of Wisconsin, enacting a Soldiers' Bonus Act on September 11, 1919 (Laws Sp. Sess. 1919, c. 5), and which by another act of the same Legislature (Laws 1919, c. 667) was to be raised chiefly by an extra or surtax on 1918 incomes; "all taxes," as used in such section, being a comprehensive term, including personal as well as property taxes, income as well as real estate, and the provision "legally due and owing" restricting both kinds of taxes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Legally Due; Tax—Taxation.]

Appeal from the District Court of the United States for the Western District of Wisconsin.

In the matter of the F. G. Borden Company, bankrupt. Miles Rice, Town Treasurer, and others, and the State of Wisconsin were enjoined from collecting income tax, and the State appeals. Reversed, and trustee ordered to pay taxes.

J. F. Baker, of Madison, Wis., for the State of Wisconsin.
Harold F. Wilke, for appellee.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. The material facts are few and undisputed. The state of Wisconsin collects a substantial part of its revenue through an income tax. Its character and general provisions are set forth in an able and carefully prepared opinion by the late Judge Winslow in the Income Tax Cases, 148 Wis. 456, 134 N. W. 673, 135

N. W. 164, where the constitutionality of the law was sustained. This tax is a personal rather than a property tax. State ex rel. Sallie F. Moon Co. v. Tax Commission, 166 Wis. 287, 163 N. W. 639, 165 N. W. 470.

Wisconsin's so-called "Soldiers' Bonus Act" was enacted September 11, 1919 (Laws Sp. Sess. 1919, c. 5), and gave to each returning soldier an option to obtain at the state's expense a four years' collegiate education, or a certain amount in cash, depending on length of service, etc. The money necessary to meet these expenses was, by another act of the same Legislature (Laws 1919, c. 667), to be raised chiefly by an extra, or so-called surtax, on 1918 incomes. These acts have both been upheld by the Wisconsin Supreme Court. State ex rel. Atwood v. Johnson, State Treas., 170 Wis. 218, 175 N. W. 589, 7 A. L. R. 1617; Id., 170 Wis. 251, 176 N. W. 224. A complete statement of the two enactments may be found in the opinions.

The F. G. Borden Company was adjudged bankrupt March 22, 1919, upon application filed the same day. The trustee refused to pay this surtax on its 1918 income, amounting to $3,046.13, and its action was sustained by the District Court; a restraining order against the treasurer being entered. The state appeals.

Both parties urge as reasons for supporting their respective views the absurd results which would follow a contrary ruling. Appellee points to a hypothetical situation that may arise if its views be not accepted, picturing a corporation that for several years previous to bankruptcy enjoyed great prosperity, with the result that large dividends were declared, followed by a year of adversity, resulting in bankruptcy. The imposition of a large progressive income tax under these circumstances would, it is claimed, entirely wipe out the assets of the estate, and leave nothing for the creditors. Appellant, on the other hand, points out that, unless Wisconsin can bring its claim within the language of section 64a of the Bankruptcy Act (Comp. St. § 9648), it will not occupy as advantageous a position as a general creditor. In other words, it says:

"There are no Wisconsin taxes more entitled to consideration, more sacred, than the taxes levied by these acts, and yet the claim for these taxes was not accorded the standing of a grog bill."

While, in doubtful cases, absurd or unfortunate results following any construction may well be considered in construing a statute, we are not much impressed by either illustration. For hardship may well be expected to fall on some claimant after bankrupcy intervenes, especially if the assets be small compared to the liabilities. The Congress has enacted the Bankruptcy Law and in one section (section 64) the rights of preferred creditors, general creditors, and the sovereign are established. Section 64a reads:

"*Debts Which Have Priority.*—a. The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

Our problem, then, is to construe this section, not to weigh the evils or hardships against the advantages arising from its application. That the Congress desired to prefer the sovereign is evident. This court said of this section in another case (In re Clark Realty Co., 253 Fed. 938, 166 C. C. A. 38):

"This statute and the construction placed upon it by the court is but another expression of the policy of the United States to exact priority in favor of the United States, the state, county, or municipality, in all cases of taxes where insolvency has intervened."

Somewhat similar expressions attributing the same purpose to the Congress may be found in various opinions. With this manifest intent to secure the sovereign as a background for the construction of section 64a, we may direct our attention to the query: Did the Congress mean to limit the sovereign's claim to "taxes due and owing by the bankrupt" to such as were due and owing at the date of the adjudication, or was the Congress directing the court to protect the sovereign in its revenues at any time that taxes may become "legally due and owing"?

Some phases of this question fortunately have been definitely settled and our task thereby is lightened. In New Jersey v. Anderson, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284, the expression "all taxes" was defined and held to include personal taxes as well as property taxes. In Dayton, Trustee, v. Stanard, 241 U. S. 588, 36 Sup. Ct. 695, 60 L. Ed. 1190, affirming the decision in 220 Fed. 441, 137 C. C. A. 35; the court held that the taxes described in section 64a were payable out of the general estate of the bankrupt, and were not limited to that part of the estate represented by the property which gave rise to the tax. The court there said:

"Considering the plain provision in section 64a of the Bankruptcy Act of 1898 (30 Stat. 544), that 'the court shall order the trustee to pay all taxes legally due and owing by the bankrupt * * * in advance of the payment of dividends to creditors,' we entertain no doubt of the propriety of requiring that the certificate holders, who had paid the taxes and assessments at the sales, be reimbursed upon the cancellation of their certificates, or of requiring that the reimbursement be out of the general assets. The taxes and assessments were not merely charges upon the tracts that were sold, but against the general estate as well."

The court was there speaking of taxes levied and assessed subsequent to adjudication and directed their payment out of the general estate of the bankrupt. The Circuit Court of Appeals in that case said:

"Taxes accruing after bankruptcy proceedings are instituted are included among those to be paid. Swarts v. Hammer, 120 Fed. 256, 56 C. C. A. 92; Id., 194 U. S. 441, 24 Sup. Ct. 695, 48 L. Ed. 1060; City of Waco v. Bryan, 127 Fed. 79, 62 C. C. A. 79."

The chief, if not the sole, difference between the District Court and the Court of Appeals was in reference to the query,

"Were taxes levied subsequent to an adjudication in bankruptcy payable out of the general estate under section 64a?"

The District Court answered in the negative. The Court of Appeals reversed it, and the Supreme Court approved the decision of the Court

of Appeals. In other words, in this case "all taxes legally due and owing by the bankrupt" is held referable to the date of the order. For no authority exists for the payment of taxes ahead of general creditors excepting section 64a. In fact, the court makes this section the sole basis for its order. If taxes levied subsequent to the adjudication are payable out of the general estate under section 64a, it can be so only because the taxes of which the Congress was speaking were "legally due and owing by the bankrupt" at the time the order of payment was made.

But counsel have attempted to distinguish between property taxes, levied subsequent to adjudication, and personal taxes levied subsequent to adjudication. The former, so it is claimed, should equitably be paid by the estate because the property passed to the trustee, has been enjoyed by the estate, and the property could, in certain states at least, be seized to satisfy the tax. Conceding for the purpose of the argument, and for that purpose only, that the claim for property tax levied under these circumstances is a stronger one in equity than a claim for an income tax levied on income earned before adjudication (because one is a property and the other a personal tax), we are nevertheless unable to find justification for the distinction either in the language of the statute or the language of these decisions.

The Congress has spoken. Our duty is to enforce the statute as enacted and in the light of the construction placed upon it by the courts. We are not to review the reasons which lead to its passage, nor to pass judgment upon their soundness. In passing, however, we may add that we see no reason why the Congress, desirous of securing the collection of the sovereign's revenues, should distinguish between revenues derived from incomes earned prior to bankruptcy and revenues derived from ownership of property. "All taxes" as used in this section is a comprehensive term. It includes personal as well as property taxes, income as well as real estate taxes. The provision "legally due and owing" restricts both kinds of taxes. If, when applied to property taxes, it applies to taxes levied subsequent to adjudication, it must necessarily also apply to personal taxes levied after adjudication but on income earned and received before that date. Had Congress added to the clause "legally due and owing" the further and modifying clause, "and a charge on the estate of the bankrupt," a different situation would have arisen.

Moreover, what reason exists for distinguishing between a property tax and an income tax on income earned prior to bankruptcy proceedings? In Wisconsin, neither the real estate nor the personal property tax had been levied at the date of adjudication. Neither was a lien upon the property that passed to the trustee. Events occurring subsequent thereto necessarily determined their amount. The Soldiers' Bonus Act laid a part of the tax upon the real estate. Why pay this tax and not that based upon the income of the bankrupt during 1918? Certainly such property tax was not strictly speaking, "due and owing" at the date of adjudication.

When the bankrupt availed itself of the Bankruptcy Act and turned over its property to its creditors, and, in a sense, died, it owed, among

other creditors, the government, the state, the county, and the town in which it resided. Its normal income tax, its personal property tax, and its real estate tax were all undetermined and their amounts unknown. It was at the same time subject to such other burdens as the state of Wisconsin might, within its constitutional powers, see fit to impose. One of these burdens to which it was subjected was an additional income tax, based on the income of the previous year, to meet an extraordinary, an emergency situation. Desirous of showing its appreciation of the services of those who made sacrifices during the World War, Wisconsin enacted this legislation. The belief that the large incomes earned during the war, and in some instances by industries favored by the war, should carry a generous portion of this burden, no doubt influenced the Legislature. The debt thus created was therefore apportioned among the property owners and the recipients of large 1918 incomes. Had the entire tax been levied against the real or personal property, the trustee would not and could not, under the decision in Dayton v. Stanard, supra, have disputed liability. The trustee should not occupy a better position than the bankrupt, had bankruptcy not intervened.

We conclude that the sovereign's revenue, which the Congress aimed to secure, included income taxes as well as property taxes; that both forms of revenue are covered by section 64a and come within the meaning of the term "all taxes" as used therein; that the clause "legally due and owing by bankrupt" modifies "all taxes" and applies to property taxes as well as to personal taxes; that the estate of the bankrupt was, at the date of adjudication, subject to be taxed upon the income earned during the previous year as well as subject to be taxed on its real and personal property; that the state's claims for such taxes, personal and property, should, under section 64a, be paid out of the general estate of the bankrupt.

The decree is reversed, with direction to order the trustee to pay the taxes in question.