In re WELLS.

In re MEYERS.

Nos. 7150, 7178.

District Court, D. Maryland.

Oct. 3, 1933.

Michael J. Hankin, Asst. City Sol., of Baltimore, Md., for mayor and city council of Baltimore, petitioner.

Nathan Hamburger, of Baltimore, Md., for Meyers' trustee.

John H. Hessey, of Baltimore, Md., for Wells' trustee.

CHESNUT, District Judge.

The petitions to review the conclusions and orders of the Referee in the above cases present two somewhat different phases of the same legal problem. In both cases the Mayor and City Council of Baltimore filed a claim for allowance, prior to payment of dividends to general creditors, for tangible personal property tax bills against the bankrupt for the year 1933. The Referee disallowed the claims in both cases, and the City has petitioned for review.

In both cases the petitions in bankruptcy and the adjudication occurred after October 1, 1932, and before January 1, 1933. The cases differ, however, in one aspect—in the Wells case the tangible personal property, on which the tax bill was based, was sold and delivered by the trustee prior to January 1, 1933; while in the Meyers case it was held by the trustee until after January 1, 1933, being sold and delivered on January 9th of that year. It will be noted that the claim as presented is for the City taxes only, there apparently being no claim for State taxes although in current practice the two are usually rendered on one bill by the City Tax Collector. The amounts involved are comparatively small ($217.26 in the Wells case and $58 in the Meyers case) ; but the principle involved is of importance not only to Baltimore City but in the administration of the Bankruptcy Act. It is a matter of some surprise that although the present bankruptcy law and the present statutory provisions for taxation in Baltimore City (with some recent amendments) have been in force for approximately thirty-five years, it appears that the questions now raised have never heretofore been presented for adjudication in this court.

The claim of the City to priority in payment is based on section 64a of the Bankruptcy Act, which, as amended by the Act of May 27, 1926, § 15 (11 USCA § 104 (a), reads as follows:

"(a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county,

district, or municipality, in the order of priority as set forth in paragraph (b) hereof."

As the Referee disallowed the claims entirely there is no question presented as to the order of priority of payment, but it is to be noted that if the claims are entitled to be allowed at all their relative priority is determined by clause 6 of paragraph (b) of section 64 of the Act, as amended, 11 USCA § 104 (b) (6), which includes "taxes payable under paragraph (a) hereof."

In considering the question presented it is to be importantly noted in the first place that we are dealing here with that class of taxes which is known as taxes on individual persons as distinct from corporations and imposed with respect to the ownership of tangible personal property. The local law applying to this class of taxes is set out in the Referee's memorandum opinion in the Wells case. But reference should also be made to the Maryland Acts 1929, ch. 226, amending the general law of taxation of the State (1929 Supplement to Bagby's Annotated Code of Maryland, art. 81) and particularly to sections 2 (22), 3 (e), and section 11 (as amended by chapter 214 of Maryland Acts of 1933); sections 28 (b), and 48 (a). In substance the local tax system with respect to this class of taxes is that October first of each year is fixed as the "date of finality" for valuation and assessment of property to control for the ensuing calendar year. The taxable basis being thus fixed as nearly as possible, an "ordinance of estimates" is then passed, and, as soon as practicable thereafter in the month of November, there is another ordinance fixing the rate of taxation for the ensuing year. The City taxes become "due and payable" on January 1st of each year and become in arrears on July 1st thereafter. While October 1st preceding the calendar tax year is made the "date of finality" so far as possible for the valuation of property and the liability of the assessed individual to pay taxes thereon for the following year, it has been clearly decided by the Court of Appeals of Maryland that the taxes are not "due and payable" until January 1st of the following year. Bamberger v. Mayor & City Council of Baltimore, 125 Md. 431, 94 A. 8; Lotterer v. Leon, 138 Md. 318, 320, 325, 113 A. 887. Thus, while the bankrupt had an underlying and apparently inescapable obligation on October 1st, 1932, for the payment of some tax thereafter, the exact amount was not known until the levy was thereafter made prior to January 1st next and there was no debt for the taxes on

October 1st or at the time of the filing of the petitions in bankruptcy in these cases. This consideration apparently was the controlling basis of the Referee's decision that the tax claim in both cases should be disallowed. This presents at once sharply the question as to whether the proper construction of section 64a of the Bankruptcy Act in providing that "the court shall order the trustee to pay all taxes legally due and owing by the bankrupt" means to limit the payment to those taxes only which were legally due and owing at the time of the filing of the petition, or does it require the payment of all taxes which may have become legally due and owing at the date of the order of the court with respect to the claims in the course of the administration of the case, which in both cases was after July 1, 1933, when the taxes were not only "due and payable" but also in arrears. The particular question was clearly and sharply presented in the case of In re F. G. Borden Co. (C. C. A. 7) 275 F. 782, 785, where it was held that the phrase "all taxes legally due and owing by the bankrupt" is referable to the date of the order of court relating to payment, and thus includes and requires the payment of taxes which may have become due subsequent to the adjudication. The decision was based in large part on Dayton, Trustee, v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190, affirming (C. C. A.) 220 F. 441, where the trustee was ordered to pay taxes levied and assessed subsequent to adjudication.

■ This authority is, I think, sufficient to justify and require the payment by the trustee of the City's tax bill in the Meyers case. Moreover, the conclusion is supported by authorities approaching the matter from a somewhat different standpoint. Admittedly in the Meyers case, the trustee held the property until after the taxes thereon had become payable for the current calendar year. It has been held in numerous federal decisions that the bankruptcy law does not have the effect of withdrawing property in the hands of a bankruptcy trustee from the reach of the sovereign's general power of taxation, and therefore taxes accruing on the property in the hands of the bankruptcy trustee must be paid by him. Swarts v. Hammer (C. C. A.) 120 F. 256; Id., 194 U. S. 441, 24 S. Ct. 695, 48 L. Ed. 1060. And the law has been so applied by the Circuit Court of Appeals for this Fourth Circuit in Henderson County, N. C., v. Wilkins, 43 F.(2d) 670, 671, where it was held that:

"Although the property in question was in the hands of the bankruptcy court when the taxes for 1927 and 1928 were levied, it was subject to taxation by the authorities of the county and municipality. Swarts v. Hammer, 194 U. S. 441, 24 S. Ct. 695, 48 L. Ed. 1060; Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190."

The 13th Edition of Collier on Bankruptcy, Vol. II, page 1454, in discussing the subject says:

"Taxes upon property in the hands of the trustee accrued since the proceedings were instituted, do not fall within the strict letter of the law, but the bankruptcy act does not withdraw the assets of bankrupts from the reach of the taxing power, and they are subject, in consequence, to the payment of taxes imposed while in the hands of the trustee." This text is supported by the citation of numerous decisions including most of those above referred to, to which may be added, In re Fisher & Co. (D. C. N. J.) 148 F. 907; In re Ponzi (D. C. Mass.) 6 F.(2d) 324; In re Conhaim (D. C. Wash.) 100 F. 268; People of State of New York v. Hopkins (C. C. A. 2) 18 F.(2d) 731, 733. Compare In re Mason Tire & Rubber Co. (D. C. Ohio) 39 F.(2d) 462, 464, where a contrary suggestion was advanced but was not made the basis of the decision. See, also, In re Davenport Dry Goods Co. (D. C. Iowa) 9 F.(2d) 477.

It is recognized in the decisions that the purpose of the Bankruptcy Act in making this special provision for the payment of taxes, coupled with the provision in section 17 of the act (11 USCA § 35), making the tax obligations of the bankrupt nondischargeable, was due to the solicitude of Congress to protect the United States and the local taxing powers in the exercise of their important governmental right of taxation. The duty of the trustee to pay the taxes is not in any way dependent on whether the taxes are "provable debts" or whether they have been listed in his schedules by the bankrupt, nor is the obligation to pay the taxes dependent upon their being made a lien by the state law on the property in the hands of the bankrupt, although the latter condition, if it exists, may be the basis of payment prior to general creditors under section 64b (7) of the Act, as amended, 11 USCA § 104 (b) (7), "debts owing to any person who by the laws of the States or the United States is entitled to priority."

It is true that in the Meyers case the trustee held the property for only a few days after the beginning of the current calendar tax year but it is also clear that the City's claim for the taxes is not apportionable. New York v. Jersawit, 263 U. S. 493, 44 S. Ct. 167, 68 L. Ed. 405. It would be well for trustees in bankruptcy on selling personal property to make an adjustment of taxes for the current year as is customarily done in Maryland upon the sale of real estate.

It may also be noted here that the City's claim does not include any item for interest or penalty. While simple interest may be allowable it is now clearly settled that penalties on overdue tax bills may not validly be collected from bankruptcy trustees. People of State of New York v. Jersawit, 263 U. S. 493, 496, 44 S. Ct. 167, 68 L. Ed. 405.

The necessary result is that the conclusion of law and order of the Referee in disallowing the City's claim in the Meyers case must be set aside and an order will be entered directing the payment of the claim in priority to dividends to general creditors.

Much that has been above said with reference to the City's claim in the Meyers case is also applicable to its claim in the Wells case but as already noted, there is the difference in the latter case that the trustee sold the tangible personal property on December 2, 1932, and the sale was ratified December 13, 1932, before the tax became due and payable, although as heretofore noted the date of finality so far as the bankrupt's underlying liability for the specific tax levy is concerned, was the prior October 1st. Whether this difference in fact justifies a different conclusion as to the payment of the City's tax bill by the trustee in the Wells case requires further consideration.

So far as I have been able to discover, there is no federal bankruptcy tax case dealing with a state or municipal tax system quite like that of Baltimore City. It is the contention of the City Solicitor that although the taxes were not due and owing by Wells prior to the institution of the bankruptcy proceedings, nevertheless as October 1st was the "date of finality" he became then inchoately liable and this liability became consummate on the following January 1st, or at latest July 1st. That is to say, as October 1st is the date of finality in the sense above stated, the taxpayer so assessed on the tax rolls on October 1st cannot escape the liability for the succeeding current calendar year by disposing of the

property after October 1st and prior to January 1st. This has been the commonly understood effect of the local tax law in Baltimore City for many years, and indeed is the necessary effect of the decision of the Court of Appeals in Baltimore City v. Jenkins, 96 Md. 192, 53 A. 930; and is made even plainer by the Act of 1929, ch. 226, above referred to. See, also, Frederick County Commissioners v. Clagett, 31 Md. 210. The case of Bamberger v. Mayor & City Council of Baltimore, 125 Md. 431, 94 A. 8, referred to in the Referee's memorandum only decided that administrators and executors of a deceased taxpayer (who was assessed for taxes as of October 1st) were not *personally* liable to pay the taxes on the assessment for the succeeding calendar year where they had fully distributed the estate after October 1st and prior to January 1st. The case does not decide that the City was not entitled to collect the taxes after January 1st from the estate of the decedent by following it into the hands of the distributees, but only there was no personal obligation on the executors under the then existing law to pay the tax after the estate had been fully distributed by them. By an amendment of the statute passed since the decision and to meet it, it was provided that executors and administrators must "retain sufficient funds to pay State and City taxes for the ensuing year upon all property so distributed, and shall pay said taxes when due." Maryland Acts of 1916, ch. 52. It may also be noted that this statute further provided "this Section shall also apply * * * to Receivers and Trustees, in regard to property in their hands as such and in regard to property distributed by them, provided that said receivers and trustees shall be liable only for taxes due at the time of the distribution upon property or funds distributed to creditors." See, also, Supplement of 1929 to Md. Code, art. 81, § 3 (e). While the statute cannot be directly operative (as the bankruptcy act must control) on trustees in bankruptcy, it nevertheless does quite clearly indicate the legislative intention that the taxes for the calendar year ensuing after October 1st must be paid by the legal representatives or successors of the taxpayer assessed on the date of finality, despite liquidation or distribution of the taxable property prior to distribution to creditors.

 The duty of the trustee in bankruptcy to pay taxes "due and owing by the bankrupt" is not dependent upon the existence of a lien in favor of the taxing authority nor even upon the receipt of the property by the trustee and the consequent benefit to the estate. It is true that in some cases it has been held that the trustee should not be required to pay corporate franchise taxes where the bankruptcy of the corporation did not occur within the taxable year although the trustee continued to hold the property into the taxable year. In re Century Silk Mills, Inc. (D. C.) 12 F. (2d) 292, 296. But if the bankruptcy does occur within the taxable year, it has been held in other cases that such taxes must be paid even though they were not assessed and collectible until after the bankruptcy proceeding. New Jersey v. Anderson, 203 U. S. 483, 494, 27 S. Ct. 137, 51 L. Ed. 284; New York v. Jersawit, 263 U. S. 493, 44 S. Ct. 167, 68 L. Ed. 405; Bates v. Archer (C. C. A. 6) 288 F. 182. And in some cases the date of the assessment has been held to fix the time when the taxes became "due and owing" although not collectible until later and after the bankruptcy proceeding. In re Flynn (D. C. Mass.) 134 F. 145; In re Sherwoods, Inc. (C. C. A. 2) 210 F. 754, 758, Ann. Cas. 1916A, 940. In this case the date of the assessment was October 1st, prior to the bankruptcy, although the rate of taxes to be paid was not determined until after the bankruptcy petition was filed.

On the whole, I conclude the mere fact that the taxable property was disposed of by the trustee prior to January 1st is not sufficient to disentitle the City to the payment of its tax claim. The controlling consideration here, as in the Meyers case, is that the taxes were due and owing and in arrears at the time the City's claim was presented and prior to distribution by the trustee. In the Wells case also the conclusion and order of the Referee must be set aside and an order should be passed allowing the payment of the City's tax claim prior to dividends to general creditors. Counsel may prepare and submit the appropriate orders.