## UNITED STATES v. STUBBS et al.

District Court, W. D. Louisiana. Monroe Division. October 7, 1929.

No. 1809.

Philip H. Mecom, U. S. Atty., of Shreveport, La., J. O. Modisette, Sp. Asst. Dist. Atty., of Jennings, La., and John C. Dyott, Sp. Asst. Dist. Atty., of St. Louis, Mo.

Harry Russell and F. P. Stubbs, both of Monroe, La., Wm. C. Dufour, John St. Paul, Jr., and T. J. Freeman, all of New Orleans, La., C. J. Ellis, of Rayville, La., and Streett & Burnside, of Lake Village, Ark., for defendants.

DAWKINS, District Judge. Pursuant to provisions of the Act of May 15, 1928, commonly known as the Flood Control Bill (33 USCA §§ 702a–702m, 704) the government seeks in this case to condemn 114.26 acres of land for the building of a portion of what is called the Monroe Circle Levee. It is also a part of the general plan for control of flood waters of the Mississippi river. The act in question authorizes the appropriation of $325,000,000 for the entire work, but makes available for present expenditures only $30,000,000. Primarily, the purpose of this suit is to determine the procedure and requirements necessary to permit the taking possession of the property desired, and the larger issue of whether actual work upon the guide levees of the general project shall commence or be restrained remains to be heard in the case of Kincaid v. the Secretary of War and Others, now pending in this court. In other words, the plaintiff seeks an interpretation of section 4 of the Act of May 15 (33 USCA § 702d) in conjunction with the provisions of sections 594 and 595 of title 33 of the U. S. Code (33 USCA), as to whether the appropriation of $30,000,000 for all purposes at the present time, coupled with the letter of the Secretary of War to the Attorney General that funds are available to pay for the particular property in this instance, is sufficient to meet the requirements of the law and to authorize the taking of possession; or whether the court may and should, in its discretion, require in each case a deposit in the registry of the court or an official depository of funds to cover the maximum value that may be found for the property.

Section 4 of the Act of May 15, 1928 (33 USCA § 702d), reads in part as follows:

"The Secretary of War may cause proceedings to be instituted for the acquirement by condemnation of any lands, easements, or rights of way which, in the opinion of the Secretary of War and the Chief of Engineers, are needed in carrying out this project, the said proceedings to be instituted in the United States district court for the district in which the land, easement, or right of way is located. In all such proceedings the court, for the purpose of ascertaining the value of the property and assessing the compensation to be paid, shall appoint three commissioners, whose award, when confirmed by the court, shall be final. When the owner of any land, easement, or right of way shall fix a price for the same which, in the opinion of the Secretary of War is reasonable, he may purchase the same at such price; and the Secretary of War is also authorized to accept donations of lands, easements, and rights of way required for this project. The provisions of sections 594 and 595 of this title are hereby made applicable to the acquisition of lands, easements, or rights of way needed for works of flood control: Provided, That any land acquired under the provisions of this section shall be turned over without cost to the ownership of States or local interests."

Section 594 of title 33 of the U. S. Code (33 USCA), which is the one pertinent to the issue now to be decided, provides:

"*When Immediate Possession of Land may be Taken.* Whenever the Secretary of War, in pursuance of authority conferred on him by law, causes proceedings to be instituted in the name of the United States for the acquirement by condemnation of any lands, easements, or rights of way needed for a work of river and harbor improvements duly authorized by Congress, the United States, upon the filing of the petition in any such proceedings, shall have the right to take immediate possession of said lands, easements, or rights of way, to the extent of the interest to be acquired, and proceed with such public works thereon as have been authorized by Congress: Provided, That certain and adequate provision shall have been made for the payment of just compensation to the party or parties entitled thereto, either by previous appropriation by the United States or by the deposit of moneys or other form of security in such amount and form as shall be approved by the court in which such proceedings shall be instituted. The respondent or respondents may move at any time in the court to increase or change the amounts or securities, and the court shall make such order as shall be just in the premises and as shall adequately protect the respondents. In every case the proceedings in condemna-

tion shall be diligently prosecuted on the part of the United States in order that such compensation may be promptly ascertained and paid."

It will be noted that section 594 of the Code requires: "That certain and adequate provision shall have been made for the payment of just compensation to the party or parties entitled thereto, either by previous appropriation by the United States or by the deposit of moneys or other form of security in such amount and form as shall be approved by the court in which such proceedings shall be instituted." It also provides that "the respondent or respondents may move at any time in the court to increase or change the amounts or securities, and the court shall make such order as shall be just in the premises and as shall adequately protect the respondents. In every case the proceedings in condemnation shall be diligently prosecuted on the part of the United States in order that such compensation may be promptly ascertained and paid." Undoubtedly, the provision for immediate taking and dispossessing the owner of private property without its value first having been paid is a drastic one, but, in the absence of constitutional inhibition, such a statute is valid. Sweet v. Rechel, 159 U. S. 380, 16 S. Ct. 43, 40 L. Ed. 188. There is no such restriction in the Federal Constitution. However, it is also settled that such a law must make certain the remedies for ascertaining and paying, through execution or other appropriate process, the value of the property to the owner; that is, there must be a forum in which the claim can be reduced to judgment and be collected, either by execution upon property or through reasonable means for coercing payment from a specified fund or by taxation.

I think it reasonably plain that the language of the first sentence of the second paragraph of section 4 of the Act of May 15, 1928 (33 USCA § 702d), above quoted, leaves to the discretion of the Secretary of War and the Chief of Engineers the details in selecting locations and choosing properties to be condemned for construction of the levees and other works in carrying out the plan of flood control. This would seem to include the right to change the same as their judgment dictates, including the abandonment of such locations or properties, as they may decide are not desirable or are too expensive. Hence, even though a proceeding for condemnation had progressed to the point where the commission provided by the act and the court had fixed the value to be paid, if the Secretary of War and Chief of Engineers were not satisfied therewith, it is not entirely clear, as a legal proposition, that they could not abandon the property and refuse to pay to the owner the price fixed. At that stage the title would not have passed, and in such event the property owner would have been deprived of his possession, with the consequent injury and inconvenience, and he would thereafter be relegated to such relief as Congress might choose to give. Neither the Act of May 15, 1928 (33 USCA §§ 702a–702m, 704), nor section 594 of title 33 of the Code specifies any point of time at which the title to the property shall vest in the government, and it would seem to follow that this would only take place after final judgment of condemnation and the payment of the sum fixed therein to the owner. In this respect, the statute differs from those considered in the case of Sweet v. Rechel, supra, and authorities cited therein, as well as from that of Shoemaker v. U. S., 147 U. S. 282, 13 S. Ct. 361, 37 L. Ed. 170. In the latter case it was also held that, where a choice of selection was given to the commissioners designated for the purpose of acquiring certain lands for the government, they did not have to take all that the original map or plan contemplated, although a larger quantity had been embraced within that area.

Any judgment rendered by the court would have to be settled through the General Accounting Office, under the authority of the Comptroller General. U. S. Code, title 31 [31 USCA] § 223. If it happened that the person whose property was involved was indebted to the United States or it had any claim for income taxes or otherwise against him, the Secretary of the Treasury in paying such judgment, if unable to agree with the debtor as to the claim of the United States, would be compelled to withhold such sum as would be sufficient in his discretion to cover the amount of the government's claim together with "all legal charges and costs in prosecuting the debt of the United States to final judgment." Id. § 227. If a dispute arose between the owner of the property and the Comptroller General, or General Accounting Office, with respect to the settlement of such a judgment, this court would have no jurisdiction over the officers in Washington to enforce the interpretation of its own judgment, in the usual proceeding by mandamus, or otherwise, if it be conceded that such a remedy would be open to the

litigant. In those circumstances, the spirit of the act, which by its very terms contemplates a speedy determination and payment of the value of property so taken, unmixed with other matters or controversies, would be thwarted. Again, it could happen that the property sought to be condemned would constitute the homestead of the defendant, exempt from execution on the government's claim, but not from its power of eminent domain, and, if it were permitted to offset against the value of the homestead such a claim, the result would be to do indirectly that which could not be done directly—subject the homestead to the payment of a debt from which it was exempt.

Of course, the power of condemning private property for public use is inherent in the government, but is subject to the limitations of the Constitution, and I think both that instrument and the statutes contemplate that the owner, whose property is so taken, shall be promptly paid, without extraneous controversy and unnecessary delay.

It is also well to mention the fact that the courts cannot keep track of the expenditures made by the agencies intrusted with this work to determine when the appropriation has been exhausted, and, while I have no doubt that there is ample money at the present time, and do not believe that the officers charged with its disbursement would issue certificates that it was available unless the same were true, yet the complications arising from litigation over the liability of the government for flowage rights, etc., might result in a condition where the maximum appropriated and authorized by Congress would be insufficient. In that case the Secretary of War and the Comptroller General might be convinced that further expenditures should be delayed pending the action of Congress. In such a contingency, one who had been dispossessed of his property would simply have to wait or be drawn into litigation with the department at Washington, which a man of small means could ill afford.

At the hearing of the rule issued in this matter there was filed the affidavit of the District Engineer that $100,000 had been allocated to work on the Monroe Circle levee, and is now in the hands of the disbursing officer of the United States Engineers at Vicksburg, Miss. However, this does not place the money under the control of the court as it would be if deposited in its registry. There would be nothing to prevent its withdrawal, as the officer mentioned is likewise beyond the jurisdiction of this district.

My conclusion is that the law warrants, and I am justified in requiring, a deposit in the registry of the court or in an official depository, subject to the orders of the court, of funds sufficient to cover the maximum value that may be found for defendant's property. For this purpose each side will be allowed to file affidavits of appraisal or estimates of value to aid in fixing the deposit.