WASHINGTON WATER POWER CO. et al.
v. UNITED STATES.

UNITED STATES v. WASHINGTON
WATER POWER CO. et al.

No. 10127.

Circuit Court of Appeals, Ninth Circuit.

April 30, 1943.

Rehearing Denied June 5, 1943.

Alan G. Paine and H. E. T. Herman, both of Spokane, Wash. (Post, Russell, Davis & Paine, of Spokane, Wash., of counsel), for appellants Washington Water Power et al.

Norman M. Littell, Asst. Atty. Gen., Vernon L. Wilkinson, and Dwight D. Doty, Attys., Department of Justice, both of Washington, D. C., Edward M. Connelly, U. S. Atty., of Spokane, Wash. (B. E. Stoutemyer, District Counsel, Bureau of Reclamation, of Portland, Or., of counsel), for United States of America.

Osee W. Noble, of Republic, Wash., for appellee Ferry County, Wash.

542

F. Leo Grinstead, of Colville, Wash., for appellee Stevens County, Wash.

Before DENMAN, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

The government brought a proceeding to condemn certain lands. Both the government and the owner appeal from the judgment fixing "just compensation" therefor.

Part of the lands in question are situated in Ferry County and part in Stevens County, State of Washington. Taxes were levied on the lands by the two counties in October, 1939. The government acquired title to the lands on December 9, 1939. Wash.Rem.Rev.Stat.Ann. § 11265, as amended: "The taxes assessed upon real property shall be a lien thereon from and including the first day of January in the year in which they are levied until the same are paid, but as between a grantor and a grantee such lien shall not attach until the fifteenth day of February of the succeeding year. * * *"

After the condemnation proceedings were commenced, the owner of the lands, The Washington Water Power Company, hereafter called the company, and the government stipulated that the value of the lands for purposes other than power site values was $7,950.35. At the trial, the company offered certain evidence which was excluded by the court below. The evidence related to the value of the lands for power site purposes. Instructions based on such evidence were requested and refused.

The excluded evidence offered by the company may be briefly summarized: that when the lands were released from Colville Indian Reservation in 1906, they were purchased by one Graves as part of a larger tract, for use as abutments for power site purposes, the tract costing $80,000; that in 1912, Graves sold the tract to a corporation for the same purposes for $100,000; that the corporation sold the tract to the company in 1921 for the same purposes for $156,043.33; that the company made preliminary studies, topographical maps, exploration studies, general engineering work, surveying work and other work at a total cost of $317,352.64; that the company spent in addition $66,832.90 for taxes and fees in connection with water rights; that the company had a contract with the state to buy shore lands for $29,000; that the company had applied to the state for permits to appropriate and store water; that the company had negotiated with the Federal Power Commission for a license, and had been granted a preliminary permit; that the highest and best use for which the lands were adaptable was as a power site; that its value for that purpose was an amount varying from $480,000 to $550,000.

The jury was instructed to return a verdict of $7,950.35 for the company plus the amount of taxes levied.

The general rule applicable to condemnation proceedings is stated in United States v. Miller, January 4, 1943, 317 U.S. 369, 63 S.Ct. 276, 279, 87 L.Ed. ——, as follows:

"The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. * * *

"It is conceivable that an owner's indemnity should be measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose. In an effort, however, to find some practical standard, the courts early adopted, and have retained, the concept of market value. * * *

"Where, for any reason, property has no market resort must be had to other data to ascertain its value; and, even in the ordinary case, assessment of market value involves the use of assumptions, which make it unlikely that the appraisal will reflect true value with nicety. It is usually said that market value is what a willing buyer would pay in cash to a willing seller. Where the property taken, and that in its vicinity, has not in fact been sold within recent times, or in significant amounts, the application of this concept involves, at best, a guess by informed persons."

The property in question is the kind where actual sales cannot be used as the basis for ascertaining "market value". In such cases appraisals are made and the jury decides from the various appraisals and other evidence, what the "market value" is. As is usual, the various appraisers do not agree as to what the property is useful for. One may think that a

piece of land is useful only for grazing, while another may think the same land is useful for agricultural purposes and would place a higher value on it for those purposes. If the two could agree on the useful purposes of the land, their appraisals would be in substantial accord. The only solution (assuming, of course, that both are reasonable men and the one is not deliberately conjuring up a useful purpose) is to leave it to the jury to determine what the useful purposes are.

Accordingly, the rule is that a witness may base his appraisal on the "highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future". Olson v. United States, 292 U. S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236. It often happens that an appraiser has conceived of a possible use for the property and placed a value on it for the possible use. At the same time, a reasonable man, while conceding that the property could be used for the purpose mentioned, would know that it was highly improbable that the property would ever be used for the purpose mentioned. The opinion of the over-enthusiastic appraiser would be excluded from evidence under the rule that "Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration". Olson v. United States, supra, 292 U.S. 257, 54 S.Ct. page 709, 78 L.Ed. 1236.

This simply means that if it was "reasonably probable" that the land would be used for the use testified to, evidence of its value for such use is admissible, but if not, then the evidence is inadmissible. United States v. Waterhouse, 9 Cir., January 6, 1943, 132 F.2d 699. In the instant case appellant contends that the land taken was adaptable to a use for power-site purposes. The government contends that while such a use was a "possible" use, it could not be exercised because (1) "a riparian owner has no property right in the bed of the stream or to the use of the water or the power inherent therein as against the United States and is, therefore, barred from a recovery for any power site value of its riparian lands" and (2) appellant's proposed dam would flood lands owned by the United States, the State of Washington, and private individuals, and there was no "reasonable probability that all ownerships could be combined".

In the ordinary case, the evidence offered by the company would be pertinent as to the question of "reasonable probability" for the special use, and as to the value of the property for such use. However, this court has held that since a riparian owner has no property right in the bed of the stream or to the use of the water or the power inherent therein as against the United States, such riparian owner may not recover for the alleged power-site value of the riparian lands. Continental Land Co. v. United States, 9 Cir., 88 F.2d 104. On the authority of that case, we hold that the proffered evidence was properly rejected and the requested instructions properly refused. While the company attempts to distinguish that case, we think it cannot be reasonably differentiated.

It is contended by the government that the allowance for taxes in the judgment is erroneous, because the government is compelled to pay only just compensation for the property and not the amount of claims against the property. The counties and appellants argue that under the law of Washington, a lien for the taxes had attached; that it was lawful for the state to legislate the time when the lien should attach; that under the Washington statute the United States was in the same position as any other purchaser; and that as a purchaser the United States was obligated to pay the taxes.

The United States did not condemn the taxes or the lien therefor. It condemned the land. It is required to pay only just compensation for that land. The fact that the land may be subject to a lien has no bearing on the condemnation. It is generally held that so far as the lien is concerned, the award stands in the place of the property. 1 Nichols on Eminent Domain (2nd Ed.) 353, § 122; 29 C.J.S., Eminent Domain, p. 1107, § 200. We think that while the United States is compelled to pay just compensation for the land, it cannot be compelled to pay the taxes. Coggeshall v. United States, 4 Cir., 95 F. 2d 986; Cobo v. United States, 6 Cir., 94 F.2d 351.

The judgment is modified by striking therefrom the judgments in favor of Stevens and Ferry Counties, and as so modified the judgment is

Affirmed.