UNITED STATES v. 150.29 ACRES OF LAND, MORE OR LESS, IN MILWAUKEE COUNTY, WIS., et al.

ELINE'S, Inc., v. TOWN OF MILWAUKEE, WIS., et al.

No. 8232.

Circuit Court of Appeals, Seventh Circuit.

May 19, 1943.

James D. Shaw, Martin R. Paulsen, Walter D. Corrigan, Sr., Kenneth F. Webster, and Francis H. Parson, all of Milwaukee, Wis., for appellant.

Fred W. Smith, Department of Justice, of Washington, D. C., John E. Martin and Harold H. Persons, Asst. Attys. Gen., and C. R. Dineen and Geo. H. Gabel, both of Milwaukee, Wis. (Oliver L. O'Boyle, Corp. Counsel, and C. Stanley Perry, Asst. Corp. Counsel, both of Milwaukee, Wis., of counsel), for appellees.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

On April 20, 1942 the United States filed in the District Court of the United States for the Eastern District of Wisconsin a petition for the condemnation of certain lands owned and occupied by the appellant, Eline's, Inc. On the same date the court entered an order for possession of the unoccupied part as of April 20, 1942, and the occupied part as of April 30, 1942, and the United States accordingly went into possession of part of the property and began the demolition of dwellings and other buildings thereon and the construction of new buildings, as well as the repairing and remodeling of large factory buildings then upon the premises. Some of the tenants of the appellant, with the consent of the United States, were permitted to remain in possession of part of the premises until April 30, another until June 15, another until July 1, and another until August 1.

On June 16, 1942 the appellant and the United States entered into an option agreement in writing for the sale to the United States of the property in question. The United States accepted the option on August 1, 1942. The option price was $2,290,000, and it was provided in the option agreement that on the payment of this sum, the appellant would execute to the United States a special warranty deed to the property. It also was provided in the option that if the United States did not wish to take title by deed from the appellant, the option agreement might be filed in the condemnation proceedings that were pending, and the option price of $2,290,000 should be the compensation to be awarded the appellant for the taking of the property by the United States. The United States decided to file the option agreement in the condemnation proceedings and to accept

title through such proceedings at the agreed price of $2,290,000, and on November 10, 1942, filed in said proceedings a declaration of taking of the appellant's property, and paid the $2,290,000 into the registry of the District Court.

Various taxing units of Wisconsin had taken steps, some beginning as early as April 7, 1942, preparatory to the levy and collection of taxes upon the property in question. Assessment was made as of May 1, 1942. On November 12, 1942, the sum of $27,662.10 was extended on the tax rolls against the property. On December 21, 1942, the clerk of the taxing units involved delivered the tax roll to the treasurer for collection.

The District Court decided that the United States took the land as of November 10, 1942, and was not liable, nor was the property liable, for the taxes, which the court held were levied November 12, 1942, and the lien thereof related back to May 1, 1942, which was the date of the assessment.

Eline's, Inc. has appealed from this order and contends that even if the tax lien did arise as of May 1, 1942, the United States took actual possession of the property April 30, 1942, and that this was the date of taking, notwithstanding the fact that the United States did not get title until November 10, 1942, the date of the filing of the declaration of taking, and that therefore the property could not thereafter be taxed by Wisconsin as it belonged to the United States.

Secondly, the appellant contends that the lien for taxes arose November 12, 1942, the date the taxes were extended on the tax roll, which was two days after the United States acquired title, and that therefore the lien for taxes arose after the title was acquired by the United States and could not attach to the property.

The question arises, When did the United States take the land in question? If the taking was of April 30, 1942, the title of the United States was acquired before the tax lien attached and there could be no taxing of the property of the United States. If the date of the taking was November 10, 1942, the further question would arise as to when the tax lien attached, May 1, 1942, or November 12, 1942. As far as the liability of the United States for the payment of the taxes is concerned, it does not make any difference, under the circum-

stances of this case, when it took the land or when the lien arose. If the United States took the land as of April 30, 1942, when it took possession of a part thereof, no lien for taxes could thereafter attach to this property as against the United States. If the United States took the property as of November 10, 1942, the lien for taxes, if it arose November 12, 1942, could not attach to the property of the United States. This is true not only because of the Wisconsin Constitution and statutes (Article II, Section 2; Wis.Stat. 70.11) but because of the theory of dual sovereignty in our form of government, which prevents the States from taxing the property of the United States Government. Van Brocklin v. Tennessee, 117 U.S. 151, 179, 180, 6 S.Ct. 670, 29 L.Ed. 845. If the taking of the property was of November 10, 1942, and the tax lien arose as of May 1, 1942, the lien did not attach to the property in that event. The United States had taken the property pursuant to a condemnation proceeding, and it paid the stipulated amount of compensation into the registry of the court. The United States had paid the fair cash market value for that property. That is all the value the property could have. It acquired a title free from all liens or claims whatsoever. Duckett & Co. v. United States, 266 U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216. The fair cash market value paid into court took the place of the property, and liens, if any, attached to the fund. United States v. Dunnington, 146 U.S. 338, 351, 13 S.Ct. 79, 36 L.Ed. 996; People of Puerto Rico, etc., v. United States, 1 Cir., 134 F.2d 267, 271; United States v. Certain Lands in Brooklyn, 2 Cir., 129 F.2d 577, 579; Cobo v. United States, 6 Cir., 94 F.2d 351, 352; United States v. Certain Parcels of Land, D.C., 44 F.Supp. 936, 937. We think it clear therefore that the United States was not liable, nor was the property after it had been taken.

Whether there was a tax lien that would attach to the fund which the United States paid into the court depends upon whether or not the taking of the property was as of November 10, 1942, and whether the tax lien attached as of November 12, 1942 or May 1, 1942. The first question is to be answered by Federal law, and the second by the law of Wisconsin.

As to the first question, we think the property in this case was taken as of November 10, 1942. The statute seems to

us clear on that point.[1] When the declaration of taking was filed in the condemnation proceedings and the compensation agreed upon was paid into the court, the title sought to be taken vested in the United States and the interest the United States sought became the property of the United States.

■ The appellant contends that the taking was as of April 30, 1942, when the United States went into possession of a part of the property. Taking possession of a part of the land was not such exclusion of the appellant owner and an appropriation of the whole property as to make the partial possession and occupancy of the United States a taking of the property within the meaning of the condemnation act. The owner was not wholly excluded, nor was this taking in a transaction in which proceedings for condemnation were not even instituted, as in United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539. In the Lynah case, a rice plantation was flooded by a dam built by the United States, and completely and permanently submerged by the waters that percolated into and overflowed onto the land. The land, and every part of it, was taken from the landowner and appropriated in its totality to the use of the United States because of the flooding; and this, without any proceeding by way of condemnation or otherwise to acquire title or use of the property. That is not this case. Here the United States had instituted condemnation proceedings and only a part of the property was taken, and whether the Government improvements exceeded in value the property demolished does not appear; and the United States did file a declaration of taking and paid the stipulated fair cash market value of the property into the court. Up until that time, the condemnor might have discontinued and abandoned its efforts. Danforth v. United States, 308 U.S. 271, 284, 60 S.Ct. 231, 84 L.Ed. 240. Under such circumstances, we think that the taking was as of November 10, 1942, when the declaration of taking was filed and the money paid into the court.

■ On the second question, as to when the lien for taxes attached, we are unable from an examination of the authorities to answer to our complete satisfaction the question as to when the lien for taxes does attach under the Wisconsin law. This is a matter of vital concern to Wisconsin. We hesitate to intrude ourselves into a situation that requires us to make a decision as to what the law of Wisconsin is, when we are not able to discern with assurance what that law is. Since we are in doubt as to what the law of Wisconsin is on that point, we think it advisable to remand the case to the District Court with instructions to retain jurisdiction until the parties can seek the answer to this question in the courts of Wisconsin. City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Railroad Commission v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Green v. Phillips Petroleum Co., 8 Cir., 119 F.2d 466. This course is clearly indicated, because the controversy is in its last analysis one between a taxpayer and a taxing unit of Wisconsin. It is a Wisconsin question, of primary interest to Wisconsin and to its taxpayers.

The cause is remanded to the District Court to retain jurisdiction until the parties can litigate the question here raised in the courts of Wisconsin, or otherwise dispose of the case.

[1] "Sec. 258a. (Condemnation of realty for sites and other uses.) lands, easements or rights of way for public use; taking of possession and title in advance of final judgment; authority; procedure.

\* \* \* \* \* \* \*

"Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto \* \* \*." (40 U.S.C.A.)