## UNITED STATES v. 12,918.28 ACRES OF LAND IN WEBSTER PARISH, LA.

### Civ. A. No. 498.

District Court, W. D. Louisiana,
Shreveport Division.

Sept. 21, 1943.

J. P. Wallace, of Shreveport, La., for the Government.

R. D. Watkins, of Minden, La., for defendants.

DAWKINS, District Judge.

The question presented in this proceeding is as to whether the owners of lands, condemned for public purposes, are liable for state and parish taxes for the calendar year 1941, accruing between the time of taking possession by the government and the passing of title. The facts pertinent to this issue have been stipulated as follows:

"The United States of America by declaration of taking No. 6 acquired title to Tract No. A-21 claimed to be owned by Thomas B. Boone and others by judgment dated January 2, 1942, filed in the Conveyance Records of Webster Parish, Louisiana on January 3, 1942 and recorded in Conveyance Book, Vol. 153 at Page 511.

"The United States of America by Declaration of Taking No. 9 acquired title to Tract Nos. A-29, A-5, B-31 and D-28 claimed to be owned by Thomas Crichton, Jr., et al, by judgment on the declaration of taking dated March 20, 1942, filed in the Conveyance Records of Webster Parish, Louisiana on March 21, 1942 and recorded under Register No. 81212.

"The assessment rolls for the year 1941, covering taxes due the State of Louisiana and the Parish of Webster for said year, were filed in the office of the clerk of the court of Webster Parish, Louisiana and in the Mortgage Records on December 20, 1941 and on that date operated as a lien in favor of the said state and parish.

"An order of immediate possession in favor of the United States of America was entered on July 3, 1941, wherein the United States of America acquired the right to immediate possession.

"All of the claimants herein have executed options covering the tracts."

It is further contended that this court has some discretion in the matter and that the equities are in favor of the landowners, who were deprived of his ability to cultivate crops upon or to rent the lands for the year 1941.

It is argued for the landowners that the taking of physical possession by the War Department on July 3, 1941, caused the lands to become public property, and the taxes, due at that time, did not become a lien thereon by the filing of the assessment rolls on December 20th of that year, and hence can not be deducted from the award; or in the alternative, that the amounts should be limited to the proportions which had accrued at the time possession was taken.

It is conceded that, in Louisiana, there is no personal liability on the part of the landowner for ad valorem taxes against

real property, and that proceedings to collect them are in rem. The possession of July 3, 1941, was taken under the authority of Section 171 of 50 U.S.C.A., the Acts of March 11, 1941, Public No. 11, 77th Congress, 22 U.S.C.A. § 411 et seq., and March 27, 1941, Public No. 23, 77th Congress, 55 Stat. 53, but the judgments or declarations of taking were not entered until January 2, March 20, and March 21, 1942. In the meantime, if the lien exists, it had attached by the filing of the assessment rolls on December 20, 1941, as above stated.

■ Neither counsel has cited any case directly in point, but after considerable research, the court has found South Carolina Public Service Authority v. 11,754.8 Acres of Land, etc., in Berkeley County, S. C., et al., 4 Cir., 123 F.2d 738, 741, which in principle, would seem to cover this case. The following is quoted therefrom:

"It is clear that the obligation to pay the taxes on land must rest upon the holder of the legal title rather than on whoever may have possession. The fact that one may lease or rent land in no way carries any obligation to pay the taxes.

"It will be seen from a reading of Section 8 of the Authority Act that neither the institution of the condemnation suit, the finding of the award, the depositing of the amount of the award, the entry upon the lands nor the verdict of the jury, divests the landowners of the fee. It is only after the final determination of the suit and the authorized execution of the deed that the title passes. This provision is in accord with the rule adopted where no statute to the contrary exists. United States v. Bouchard, 2 Cir., 64 F.2d 482; Cherokee Nation v. Southern Kan. R. Co., 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295; Kennedy v. Indianapolis, 103 U.S. 599, 26 L.Ed. 550; United States v. Stubbs, D.C., 35 F.2d 357; Haig v. Wateree Power Co., 119 S.C. 319, 112 S.E. 55; South Carolina State Highway Department v. Bobotes et al., 180 S.C. 183, 185 S.E. 165 [121 A.L.R. 1]." See also authorities cited therein.

It is true that the proceeding there was under the state law, and the statute dealt specifically with the payment of taxes out of the award; but the court, as we have to do here, dealt with the question of when the property was removed from the status of private ownership, against which the lien could accrue, and in doing so, held that it

was only when the legal title had passed to the public agency and not when possession had been taken. The court, in disposing of the contention that the owner was deprived of the use of his lands, pointed out that under the law the public agency is required to pay interest at the rate of six per cent upon the award, from the time it is legally due, except as to sums deposited, the major portion of which the owner, if his title is clear, may be permitted to withdraw; and that this serves to compensate the owner for the delay.

■ Inasmuch as the title to the several tracts of land in the present case remained in the owners until the judgments of declaration of taking were signed in January and March 1942, the filing of the tax rolls on December 20, 1941, caused the tax lien to attach to the proceeds, which followed them into the hands of the court, requiring payment of the taxes in amounts which are not disputed.

Proper decree should be presented.