## UNITED STATES v. 412.715 ACRES OF LAND IN CONTRA COSTA COUNTY et al.

No. 22215-S.

District Court, N. D. California, S. D.

May 7, 1945.

See also, D.C., 53 F.Supp. 143.

M. Mitchell Bourquin, Sp. Asst. to Atty. Gen., for plaintiff.

Lyman Henry and Arthur B. Dunne, both of San Francisco, Cal., for defendant Santa Cruz Oil Corporation.

Heller, Ehrman, White & McAuliffe and Brobeck, Phleger & Harrison, all of San Francisco, Cal., for North Bay Realty & Development Co. and Wells Fargo Bank & Union Trust Co.

Chickering & Gregory, of San Francisco, Cal., for Central Bank and Blake Brothers Co.

James R. Agee, of Oakland, Cal., for Wells Fargo Bank & Union Trust Company, as trustee for A. S. MacDonald and Royal P. MacDonald.

ST. SURE, District Judge.

Plaintiff condemned 412.715 acres of land in Contra Costa county, California, for the purpose of establishing an oil base for the Pacific fleet. The land was held in four separate ownerships as follows: Tract 1 by Santa Cruz Oil Corporation, tract 2 by North Bay Realty and Development Company, tract 3 by Wells Fargo Bank and Union Trust Co., and tract 4 by Blake Brothers Company. The single issue of market value was submitted for decision to a jury, which

found as to tract 1 a value of $361,330; as to tract 2, $86,625; as to tract 3, $10,000; and as to tract 4, $30,000.

Defendants have filed objections to the form of plaintiff's proposed judgment. The two principal questions raised by the objections are (1) whether the plaintiff should assume liability for taxes which became delinquent after it took exclusive possession of defendants' lands; and (2) whether defendants are entitled to interest at the rate of six percent, as proposed by the judgment, or seven percent, the rate prescribed by California law, from the date of taking to the date of filing the declaration of taking.

On June 25, 1942, plaintiff under an order for immediate possession commenced construction of a naval oil supply base. On March 15, 1945, it filed its declaration of taking under section 258a of 40 U.S.C.A. Defendants contend that the entry into possession of the land by the plaintiff, with the intent to acquire a fee simple interest therein, fixed its obligations and burdens as of the date of entry, and that they should not be required to pay taxes which became delinquent thereafter.

■■■ While there is no question that there was a taking on June 25, 1942, the law appears to be settled that legal title passes to the Government when the declaration of taking is filed and not when it takes possession. Catlin v. United States, 65 S.Ct. 631; Dade County, Fla. v. United States, 5 Cir., 142 F.2d 230; United States v. 12,918.28 Acres, D. C., 51 F.Supp. 755; 40 U.S.C.A. § 258a. Until the passage of legal title, taxes continue to be assessed and become liens against the land. Upon the payment into court of a fund to cover the market value of the land, the United States acquires title free and clear of encumbrances, and all existing liens attach to the fund. Upon passage of title to the United States, of course, no further taxes may be assessed, for one sovereign may not tax another. To require the plaintiff to assume the taxes which became due prior to passage of title would be to do indirectly what cannot be done directly, and no authorities are cited by defendants, nor can any be found, requiring the United States to pay taxes which were a lien against the land at the time of the passage of title. There is no evidence showing that there has been any increase in taxes due to the taking over by the United States or the improvements placed upon the property by it.

■■ Defendants rely on the last sentence of section 258a, which provides that "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable", stating that it would be inequitable to require them to pay taxes accruing after they were deprived of possession of the land. The quoted provision has been interpreted as empowering the court to distribute the fund deposited in court to the persons entitled thereto, and to determine what is "just and equitable" between lienors and lienees. The United States is not a party to the claims against the fund nor does it have any interest in the manner of distribution of the fund. Washington Water Power Co. v. United States, 9 Cir., 135 F.2d 541; United States v. Certain Lands in Brooklyn, 2 Cir., 129 F.2d 577. The provision has not been interpreted as permitting the court to order that a fund representing just compensation be increased by the amount of the tax liens on the lands prior to the passage of title, or that the land be taken subject to such liens, and I can find no authority for such procedure. Defendants cite United States v. 25,936 Acres of Land, More or Less, in Edgewater, Bergen County, N. J., D.C., 57 F. Supp. 383, from which case an appeal by the United States is now pending, wherein the New Jersey Court refused to deduct from the fund taxes which were due but had not become a lien against the land at the time of payment. Under the New Jersey statute taxes assessed during the year did not become a lien against the land until December 31 of that year. The court held that the Government took the land subject to an "inchoate lien" for taxes. In California taxes become a lien at the time of their assessment. The present case would fall within the express exception stated in Empress Mfg. Co. v. City of Newark, 109 N.J. Law 131, 160 A. 388, 389, cited by the New Jersey District Court: "We may assume, for the purpose of this discussion, that the tax lien, if it existed at the time of the payment of the award, was deductible." No question of time of passage of title was involved in that case.

In United States v. 125.71 Acres, D.C. Pa., 54 F.Supp. 193, condemnation proceedings were commenced and possession taken of the land in August of 1939. In December of 1943, the amount of the verdict was

paid into the registry of the court. The court held that title did not vest in the United States until the latter date, and that taxes accruing in the interim were liens payable out of the fund deposited by the United States. It appears that no declaration of taking was filed. In United States v. 12,-918.28 Acres, D.C., 51 F.Supp. 755, the United States took possession of land on July 3, 1941, and filed its declaration of taking on January 2, 1942. Taxes became a lien on the property on December 20, 1941. The court held that since title remained in the owners until the declaration of taking was filed, the tax lien attached to the proceeds.

■ I conclude that the fund is subject to liens for taxes assessed prior to the filing of the declaration of taking.

The proposed judgment provides for interest at the rate of six percent per annum from July 25, 1942, the date the United States took possession, to March 15, 1945, the date of filing the declaration of taking, on the entire amount of the award, and, following the provisions of section 258a, for interest from March 15, 1945, of six percent per annum on the amount of the award, less the amount deposited with the declaration of taking. Defendants contend that they should have interest at the rate of seven percent from July 25, 1942, to March 15, 1945.

■ Ordinarily this court would feel bound to follow the Federal statute as to the rate of interest constituting just compensation, indicated by the provision for six percent interest after the declaration of taking is filed. However, there is authority permitting the court to use as a measure of interest in condemnation cases the legal rate of interest in the state where the land is situated, although this is not required by conformity statutes. United States v. Rogers, 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566; Seaboard Air Line R. Co. v. United States. 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; United States v. A Certain Parcel, D. C., 47 F.Supp. 30. Plaintiff admits that it is discretionary with the judge what rate of interest will be proper under the circumstances of the individual case, and argues that there appears no reason why a greater rate of interest than that prescribed by Congress should be allowed in this case. I think there is such a reason. The owners were excluded from possession of their property on June 25, 1942, and yet must be held liable for taxes assessed thereafter because of the failure of plaintiff to file its declaration of taking. A hardship is worked upon defendants through no fault of theirs, which will be in some measure compensated by the allowance of an additional one percent of interest. I shall therefore allow interest at the rate of seven percent per annum from June 25, 1942, to March 15, 1945.

The proposed judgment may be amended accordingly.