THE PEOPLE OF THE STATE OF NEW YORK ex rel. MERGENTHALER LINOTYPE COMPANY, Appellant, against WILLIAM W. MILLS et al., Constituting the Tax Commission of the City of New York, Respondents. [Park Avenue, Grand Avenue and Ryerson Street, Borough of Brooklyn.]

Second Department, December 29, 1952.

168

*William A. Lamb* and *Charles Lamb* for appellant.

*Denis M. Hurley, Corporation Counsel* (*Morris Handel* and *William A. Marks* of counsel), for respondents.

*Per Curiam.* In 1942 the property involved in this proceeding was condemned at the request of the Defense Plant Corporation, which had been created by the Reconstruction Finance Corporation in accordance with an act of the Congress of the United States approved June 25, 1940 (54 U. S. Stat. 572). It was one of several national corporations brought into being to acquire real property, critical and strategic materials and machinery for the manufacture of war implements to aid the

United States in its program for the national defense. At the same session of Congress, the Secretary of War was likewise authorized to acquire similar property out of an appropriation made for the War Department for national defense purposes. In addition, he was granted power to dispose of land and other property when he deemed it necessary in the interest of national defense (54 U. S. Stat. 712, approved July 2, 1940). Thereafter, by Public Law 108, 1941 (55 U. S. Stat. 248), Congress extended to corporations created by the Reconstruction Finance Corporation the exemption from taxation which had been granted to the latter. Congress had specifically provided that the latter's real property could be taxed (47 U. S. Stat. 5, § 10) and the Supreme Court of the United States has decided that real property of the Defense Plant Corporation was taxable in accordance with local law. (*R. F. C.* v. *Beaver County,* 328 U. S. 204.)

In January, 1942, the Defense Plant Corporation entered into an agreement with the relator whereby the latter was to convey the property involved to the former for a price to be agreed upon, and become the lessee, obligated to pay real estate taxes. It was also provided that the relator had an option to purchase, which when exercised called for credit on the purchase price of any payments made by it to the Defense Plant Corporation as rental. No agreement was reached on the price to be paid by the latter corporation for the property, and, at its request, prior to March 17, 1942, the Secretary of War caused the Attorney General to proceed to obtain title to the property by condemnation. The deposit necessary to be made before title could vest in the United States (*United States* v. *Certain Parcels of Land, etc.,* 61 F. Supp. 164, 169) was made with funds of the Defense Plant Corporation and the amount of the judgment in condemnation was likewise paid with its funds, as was the cost of the construction of the building on the premises. On March 17, 1942, title vested in the United States. By an act approved March 27, 1942, Congress authorized the acquisition by the Reconstruction Finance Corporation of land through condemnation and directed the immediate transfer of title so obtained to that corporation. By another act approved on the same date, authority to cause property to be acquired by condemnation was conferred on Government corporations when authorized by the President (56 U. S. Stat. 174, ch. 198; 56 U. S. Stat. 176). In August, 1942, by executive order such authority was conferred on the Reconstruction Finance Corporation (Executive Order 9217).

In 1943 the property was carried on the assessment roll of the City of New York for the tax year 1943–1944 as exempt property, the owner or occupant of which was the United States. In the following year it was listed as taxable property and an assessment for 1943–1944 was entered on the roll.

The relator contends that the property was exempt from taxation and there was no power to enter in 1944 an assessment for 1943–1944. From this record it appears that none of the departments or agencies of the Government of the United States which dealt with this property, ever asserted that it was immune from local taxation. It must be presumed that the Secretary of War, when he conveyed the property to the Defense Plant Corporation on September 21, 1944, did so in performance of power conferred upon him. He stated in the conveyance that it was made pursuant to the statute which had directed immediate transfer of title to the Reconstruction Finance Corporation to carry out the authority vested in its corporate creations, among which was the Defense Plant Corporation. No part of the appropriation for the War Department appears to have been expended in the proceeding to condemn or in payment of any part of the value fixed by the decree. It was impossible to take title through condemnation, other than in the name of the United States (U. S. Code, tit. 40, §§ 257–258a). The proceeding was for the purpose of permitting the Defense Plant Corporation to proceed to aid the national defense by ownership of the land. Undoubtedly, the adoption of the legislation approved March 27, 1942, ten days after the decree in condemnation, had been considered prior to the condemnation. The Secretary of War interpreted the act requiring immediate transfer of title to the Reconstruction Finance Corporation to embrace property which had been condemned at the request of the Defense Plant Corporation, and for which it was obligated to pay. That interpretation is not unreasonable in light of the various statutes enacted by Congress to bring into the production of war material every available agency of the Government. The delay in making the conveyance by the Secretary of War did not alter the fact that the title in the United States was held for immediate transfer to the Defense Plant Corporation, the real property of which was subject to local taxation.

When this property was noted as exempt on the assessment roll for 1943–1944 it was, in effect, omitted as taxable real property. The purpose of assessment is to provide a basis for taxation of the property. No tax could be levied against this property when marked " exempt." There was, therefore, power to place

the assessment for 1943-1944 on the tax roll for the year 1944-1945 (Tax Law, § 24) when the relation of the Defense Plant Corporation to the property had been disclosed.

The final order should be affirmed, with costs.

Present: JOHNSTON, Acting P. J., ADEL, WENZEL, MACCRATE and SCHMIDT, JJ.

Final order unanimously affirmed, with costs. [See *post*, p. 974.]