UNITED STATES v. 909.30 ACRES OF LAND, MORE OR LESS, IN MOUNTRAIL COUNTY, N. D. et al.

UNITED STATES v. 11,993.32 ACRES OF LAND, MORE OR LESS, IN MOUNTRAIL AND McKENZIE COUNTIES, N. D., et al.

Civ. Nos. 2272, 2400.

United States District Court
D. North Dakota, N. W. D.
Sept. 25, 1953.

Harry Lashkowitz, Asst. U. S. Atty., of Fargo, N. D., for plaintiff.

C. A. Waldron and Harris Kenner, of Minot, N. D., and C. L. Foster, of Bismarck, N. D., for defendants.

VOGEL, District Judge.

The question before the Court in the instant cases is whether or not state taxes for the year of 1952 became a lien against certain lands involved in condemnation proceedings and which are now owned by the United States.

Some time ago the United States instituted condemnation proceedings against three tracts of farm land here involved (Tract No. P-1352, owned by Allen L. Madison, Civil No. 2272; Tract No. P-1316, owned by Ralph Winge, and Tract No. N-1209, owned by A. N. Winge, Civil No. 2400), as well as numerous other tracts. Up to the time of trial, no declaration of taking had been made and the United States made no deposit of estimated compensation in the registry of this Court. The cases came on for trial before a jury on November 3, 1952. The jurors were to determine the just compensation to which the landowners would be entitled by reason of the taking of their lands. That just compensation was to be measured by the market value of the land at the time of taking. It accordingly became important to ascertain "the time of taking". It was thereupon agreed by counsel for the Government and counsel for the landowners that the "time of taking" was the time of trial; namely, November 3, 1952, and the jurors were to find market value as of that time.

On December 16, 1952, judgment was entered in the cases on the verdicts of the jury, and therein it was provided that title would vest in the United States upon deposit in court of the compensation provided therefor. Such deposit was not made until April 20, 1953. $325 has been withheld in the registry of this Court as a disputed item covering what is claimed to be the 1952 taxes on the tracts with which we are here concerned.

Subsequent to November 3, 1952, and prior to April 20, 1953, the date of the deposit, the Government did, however, exercise some of the rights of ownership in that it entered into leases with the former owners covering the land, the leases running from November 3, 1952 to November 3, 1953, and it required and received payment of rents from the former owners for the period be-

ginning with November 3, 1952. On February 11, 1953, this Court, upon a hearing, entered an order providing that the Government should pay interest on the compensation to be received by the former landowners from November 3, 1952, until the deposit of the compensation has been made.

■ Ordinarily, under North Dakota law, taxes assessed in any year do not become liens upon the land until January 1st of the following year. NDRC 1943, Sec. 57–2001. It is conceded, of course, that property of the United States may not be taxed. Thus, if the property involved here became property of the United States prior to January 1, 1953, then the 1952 taxes did not become a lien against the land on that date. If the land did not become the property of the United States until the date of the deposit, April 20, 1953, then the 1952 taxes did become a lien against the land on January 1, 1953, and, upon deposit of the award, such lien was transferred from the land to the deposit. Washington Water Power Co. v. U. S., 9 Cir., 1943, 135 F.2d 541; U. S. v. 150.29 Acres in Wis., 7 Cir., 1943, 135 F.2d 878; U. S. v. 25.936 Acres in N. J., 3 Cir., 1946, 153 F.2d 277.

It appears that the United States did assert some of the rights of ownership immediately after November 3, 1952, and agreed that November 3, 1952, was the "date of taking". It is also true that the rights of the parties became fixed upon commencement of the trial on November 3, 1952, for the United States was then bound to pay whatever just compensation should be finally determined. It did not have the alternative of deciding that because such just compensation had been determined at too high a figure or for some other reason that it would dismiss and not proceed. Once having embarked upon the trial of this case, the United States could not withdraw, dismiss or abandon the action in the absence of an agreement between the parties or an order of the court. Federal Rules of Civil Procedure, Rule 71A(i), 28 U.S.C.A. It was for that reason, and because the Government agreed that "the time of taking" was the time of trial and the fact that the Government leased the property as of November 3, 1952 and charged rent there-

for beginning with that date, that this Court directed that interest on the awards should commence running from November 3, 1952. However that may be, it appears perfectly clear that "legal title" did not pass to the United States until April 20, 1953, the date the deposit of compensation was made. U. S. v. Certain Parcels of Land in City of Baltimore, D.C.1945, 61 F.Supp. 164; U. S. v. 25.936 Acres in N. J., supra; Collector of Revenue Within and for the City of St. Louis, Mo. v. Ford Motor Co., 8 Cir., 1946, 158 F.2d 354; U. S. v. Certain Land Situate in City of St. Louis, D.C.1949, 86 F.Supp. 297; U. S. v. Certain Parcels in Philadelphia, Pa., 3 Cir., 1942, 130 F.2d 782; U. S. v. 125.71 Acres in Pa., D.C.1944, 54 F.Supp. 193.

■ From the cases just cited, it also appears that until "legal title" vests in the United States, a local tax lien may attach to the land, if state law so provides. Thus, in U. S. v. Certain Parcels of Land in City of Baltimore, Md., supra, where a somewhat similar problem confronted the Court, Judge Chesnut stated, 61 F.Supp. at page 168:

"The government obtained no substantial ownership in this property prior to the payment of the fund into court on May 25, 1945. Theretofore it had only bare possession under the Second War Powers Act and indeed its right to condemn the property had been constantly opposed by the property owner. It is no impairment of the principle that government property is not subject to state taxation to give effect to local tax laws of the kind here involved when the lien of the tax becomes fixed before the government takes title or ownership. United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327."

Again, 61 F.Supp. at page 168, the Court states:

"I do not understand that it is even contended that a mere physical possession taken by the government under the Second War Powers Act could vest in the United States any title or ownership of the property, but results

merely in actual possession and use by the government under the War Powers. While this condition lasts the owner still remains liable for accruing local taxes on the property."

■ . The law of North Dakota appears quite plainly to be that until "legal title" passes to the exempted body, tax liens may attach. Thus, one finds in State v. Divide County, 1938, 68 N.D. 708, 283 N.W. 184, at page 189, the Supreme Court of North Dakota using the following language:

"Until this land becomes the property of the State *through the obtaining of a deed* the land is still subject to taxation. Until such land becomes the property of the State, the county is not prohibited from obtaining a tax deed for the land; but such lien for taxes, or the obtaining of a tax deed upon the strength of such tax certificates, in no way destroys the lien of the State's mortgage nor militates against the right of the State to foreclose its mortgage." (Emphasis supplied.)

And further on the same page:

"After the State acquires *title* to the land, the land is no longer subject to taxation." (Emphasis supplied.)

■ Considering all of the facts and circumstances here involved, the Court is of the opinion that while the United States acquired some of the rights of ownership as of November 3, 1952, and the interest of the parties became fixed at that time, the United States did not acquire such "legal title" to the property as would make it non-taxable until the date of the deposit, April 20, 1953, and that accordingly the 1952 taxes did become a lien against the land on January 1, 1953. Upon acquisition of legal title by the United States, the tax liens were transferred from the land to the fund on deposit in the registry of this Court (see cases cited supra), and should accordingly be paid therefrom.

■ There can be no apportionment of the tax, so that the former owners would be charged with taxes only for that portion of the year prior to November 3, 1952, unless a state statute specifically provides therefor. Collector of Revenue v. Ford Motor Co., supra; U. S. v. Certain Parcels of Land in Phil., supra. No such provision is found in the laws of North Dakota. It would appear, however, that the Court's conclusion meets with the equities in that the former owners enjoyed the use and possession of the property for all of the growing season of 1952.

It is accordingly held that the moneys on deposit representing the unpaid taxes for 1952 should be distributed to the taxing units entitled thereto.

It will be so ordered.